IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

PRISCILLA DEAL and TERRY DALE DEAL,

    Plaintiffs,

    v.

STATE FARM FIRE AND CASUALTY COMPANY,

    Defendant.

CV 623-042

O R D E R

Before the Court is Defendant's motion for partial summary judgment. (Doc. 33.) For the following reasons, Defendant's motion is **GRANTED**.[1]

## I. BACKGROUND

On May 23, 2022, a tree fell on Plaintiffs' home, damaging the home's structure as well as Plaintiffs' personal property inside the home. (Doc. 36-1, at 1.) Consequently, Plaintiffs were effectively required to relocate from May 23, 2022, until January 31, 2023, while the home was being repaired. (Doc. 36-3, at 3.) During this time, Plaintiffs' home and personal property

---

[1] Defendant also filed a motion for oral argument on its motion for partial summary judgment. (Doc. 34.) Because the motion was thoroughly briefed, the Court finds no need to conduct a hearing on the matter. As such, Defendant's motion for a hearing (Doc. 34) is **DENIED**.

were insured by Defendant under Homeowner's Insurance Policy Number 81C7K7207 (the "Policy"). (Doc. 13, at 14-66; Doc. 33-9.) Immediately upon the damage occurring, Plaintiffs submitted a claim to Defendant for coverage under the Policy. (Doc. 36-3, at 7.) In the following months, the Parties routinely communicated about coverage, and Defendant provided Plaintiffs with limited coverage for the damages incurred. (See Doc. 33-6; Doc. 36-3, at 11-13.) However, in December 2022, Defendant informed Plaintiff that no further benefits would be paid under the Policy. (See Doc. 33-3, at 1.)

Thereafter, on March 2, 2023, Plaintiffs sent a demand letter appealing Defendant's decision to deny further coverage as to "claimed Additional Living Expenses," and they attached the relevant invoices for temporary housing (the "March Demand Letter"). (Doc. 33-3.) The March Demand Letter made a clear threat of litigation in the event Defendant continued to deny the requested payment. (Id. at 3.) In response to the March Demand Letter, Defendant paid Plaintiffs $79,898.00 for the expenses demanded. (Doc. 33-2, at 2; Doc. 33-6, at 2; Doc. 36-1, at 2.) On April 4, 2023, Plaintiffs sent a second demand letter requesting further "Additional Living Expenses," again attaching the relevant invoices for temporary housing (the "April Demand Letter"). (Doc. 33-4.) And again, in response to the April Demand Letter, Defendant paid Plaintiffs $5,350.00 for the expenses demanded.

(Doc. 33-2, at 2; Doc. 33-6, at 2; Doc. 36-1, at 2.) On May 12, 2023, Plaintiffs sent a third demand letter claiming additional coverage, this time for "replacement of personal property and repair of damaged components of their home" (the "May Demand Letter"). (Doc. 33-5.) The May Demand Letter provided a list of specific personal property and repair expenses Plaintiffs sought coverage for, along with screenshots of online prices for those items, and again made a clear threat of litigation if the requested expenses were not paid. (Id.)

Eleven days after sending the May Demand Letter, on May 23, 2023, Plaintiffs filed this action in the Superior Court of Bulloch County, Georgia seeking coverage for unpaid portions of Plaintiffs' claim, and Defendant subsequently removed the action to this Court. (Doc. 1; Doc. 1-1.) Defendant filed this motion for partial summary judgment on April 12, 2024 (Doc. 33), to which Plaintiffs responded (Doc. 36), and Defendant replied (Doc. 37).

## II. LEGAL STANDARD

Defendant moves for partial summary judgment under Federal Rule of Civil Procedure 56. (Doc. 33.) Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law.

3

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation omitted) (internal quotation marks omitted).

The moving party has the initial burden of showing the court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case, or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark,

4

929 F.2d at 608.

If—and only if—the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. Fitzpatrick, 2 F.3d at 1116. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Id. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk gave the Parties appropriate notice of the motion for summary judgment and informed them of the summary judgment rules, the right to file affidavits or other

materials in opposition, and the consequences of default. (Doc. 35.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is now ripe for consideration.

### III. DISCUSSION

Plaintiffs assert claims for breach of contract (Count I) and bad faith refusal to insure, pursuant to O.C.G.A. § 33-4-6 (Count II). (See Doc. 13.) Defendant moves for summary judgment with respect to Count II, arguing the claim procedurally and substantively fails as a matter of law. (Doc. 33.)

> To prevail on a claim for an insurer's bad faith under O.C.G.A. § 33-4-6, the insured must prove: (1) that the claim is covered under the policy, (2) that a demand for payment was made against the insurer within 60 days prior to filing suit, and (3) that the insurer's failure to pay was motivated by bad faith.

BayRock Mortg. Corp. v. Chicago Title Ins. Co., 648 S.E.2d 433, 435 (Ga. Ct. App. 2007) (citing O.C.G.A. § 33-4-6). Thus, to prevail on a bad faith claim, a demand must be made more than 60 days before filing suit and include language "sufficient to alert the insurer that it is facing a bad faith claim for a specific refusal to pay so that it may decide whether to pay the claim." Id. (quoting Arrow Exterminators, Inc. v. Zurich Am. Ins. Co., 136 F. Supp. 2d 1340, 1356 (N.D. Ga. 2001)). While no specific

6

language is necessary to satisfy this requirement, the demand must put the insurer on notice that "a bad faith claim will be asserted if the specific loss noted is not paid." Arrow Exterminators, 136 F. Supp. 2d at 1356. Because O.C.G.A. § 33-4-6 imposes a penalty on insurers, its requirements must be strictly construed. BayRock, 648 S.E.2d at 435 (citation omitted). As such, "[a] plaintiff's failure to properly satisfy the demand requirement is an absolute bar to recovery of a bad faith penalty and attorneys' fees under the statute." S. Realty Mgmt., Inc. v. Aspen Specialty Ins. Co., No. 108-CV-0572, 2008 WL 4787511, at *2 (N.D. Ga. Oct. 27, 2008) (citations omitted).

In the present case, the April Demand Letter and May Demand Letter fail to comply with the 60-day notice requirement because they were sent 49 days and 11 days, respectively, prior to Plaintiffs filing suit. (See Doc. 1; Doc. 33-4; Doc. 33-5.) Thus, the March Demand Letter is the only potentially effective demand. However, the Parties dispute the scope of the March Demand Letter. Defendant argues the March Demand Letter only notified Defendant of Plaintiffs' intent to bring legal action as to the "Additional Living Expenses" sought within it. (Doc. 33-1, at 5-6.) Plaintiffs, on the other hand, contend the letter should be read as a demand for the full amount of the original claim because it contained the phrases "all attendant circumstances" and "full coverage limits." (Doc. 36, at 9.)

The Court finds the language in the March Demand Letter gave notice of threatened litigation only as to the "Additional Living Expenses" sought within it. While the bar for what language is needed to notify an insurer of intent to sue is "exceedingly low," the purpose of the notice requirement must still be achieved. First Solar Elec., LLC v. Zurich Am. Ins. Co., No. 521-CV-408, 2022 WL 731518, *4 (M.D. Ga. Mar. 10, 2022). That is, the demand must notify the insurer of an intent to bring legal action as to *the specific refusal* the demand pertains to. See BayRock, 648 S.E.2d at 435; accord Arrow Exterminators, 136 F. Supp. 2d at 1356. Plaintiffs' March Demand Letter certainly contained sufficient language to put Defendant on notice they intended to bring legal action for bad faith if the requested expenses were not paid – it cited the relevant statute and expressly stated "denial will result in litigation." (Doc. 33-3, at 3.) However, when reading the letter in full, it is clear the *specific refusal* the demand language cited was only the refusal to pay the expenses appealed therein — the living expenses. (See id.) The letter states "a denial *of this appeal* will result in litigation," noting that a court's review during litigation *of the appeal* will include "all attendant circumstances." (Id. (emphasis added).) The March Demand Letter also requests the insurer honor "this claim," referring to the appeal for additional living expenses, "for the full coverage limits." (Id.) Thus, on its face, the letter only

8

makes a demand for the coverage of the rental expenses discussed at length therein and only puts the insurer on notice of potential litigation as to those expenses. (See id.) The letter makes no reference to Plaintiffs' personal property claims, nor to Defendant's denial of coverage for such. (Id.)

Plaintiffs also argue their "notice was reasonable under the circumstances . . . in light of the totality of Plaintiffs' communication with Defendant in the months preceding and following the March [Demand Letter]." (Doc. 36, at 13.) However, Plaintiffs fail to identify or expand upon these "communications." Plaintiffs, separately, provide emails and an affidavit stating Plaintiffs and Defendant communicated about personal property coverage, but they do not establish how any of these communications are connected to the March Demand Letter. (Doc. 36-3, at 4, 11-13.) Moreover, the only specific communications provided or referenced in the record are from 2022, prior to Defendant informing Plaintiffs that no further benefits would be paid under the Policy, and from March 2024 when the property was inspected. (Id.) None of these are temporally proximate or relate in any way to the March Demand Letter as to change its unambiguous language or the findings herein.

Regardless, it is undisputed Plaintiffs accepted Defendant's payment sent in response to the March Demand Letter.[2] (Doc. 33-6; Doc. 33-8, at 82.) Thus, even if the March Demand Letter can be reasonably read as demanding payment beyond the additional living expenses, which the Court finds it cannot, the demand was effectively satisfied by Defendant's payment, precluding any bad faith allegations stemming from those demands. See Morris v. Aetna Life Ins. Co., 287 S.E.2d 388, 391 (Ga. Ct. App. 1981) (finding the insured's retention of a check sent by the insurer in response to a demand precluded a finding of bad faith); Dixie Const. Prods., Inc. v. WMH, Inc., 347 S.E.2d 303, 304 (Ga. Ct. App. 1986) (finding insured's acceptance of payment precluded bad faith claim as a matter of law). Thus, because none of Plaintiffs' demand letters strictly comply with the requirements of O.C.G.A. § 33-4-6, Defendant's motion for partial summary judgment as to Count II is **GRANTED**.

---

[2] Plaintiff Terry Deal cannot recall specifics as to payments from Defendant; however, he confirms some payments were received. (Doc. 33-7, at 81-82.) Plaintiff Priscilla Deal confirms the receipt of the specific payments sent in response to the March and April Demand Letters. (Doc. 33-8, at 82.)

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendant's partial motion for summary judgment (Doc. 33) is **GRANTED**.

**ORDER ENTERED** at Augusta, Georgia, this 14th day of February, 2025.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA